UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN MANCINI,

    Plaintiff,

v.                                  Case No: 8:23-cv-2729-CEH-TGW

ANA PAULA PEREIRA and A. P.,

    Defendants.

_____/

## ORDER

This child support dispute comes before the Court on Plaintiff Martin Mancini's Statement in Support of Federal Question Jurisdiction (Doc. 33) and Defendant Ana P. Pereira's Reply (Doc. 34). The Parties filed these responses pursuant to the Court's Order directing Plaintiff to show cause as to why this action should not be dismissed for lack of subject-matter jurisdiction. *See* Doc. 31.

Plaintiff brings this declaratory judgment action against Defendant Pereira, the mother of his child, and A.P., their minor child. Doc. 1 at 1. In his Complaint, Plaintiff asks this Court to "establish the unenforceability of a foreign child support order entered in Brazil" and seeks a declaration that "support orders entered by the Brazil Court against [him] are not enforceable in Florida under" the Hague Convention on the International Recovery of Child Support (the "Convention"). *Id.* He alleges that the foreign court order would be "unenforceable under the [Convention] . . . and under Florida's Uniform Interstate Family Support Act [("UIFSA")] as adopted by the

Florida Legislature in sections 88.7081(2), 88.2011, Fla. Stat." *Id.* ¶ 43. Plaintiff asserts that federal question jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1331. *Id.* ¶ 6.

Upon review of the complaint, the Court questioned whether Plaintiff had met his burden of establishing federal subject-matter jurisdiction. *See* Doc. 31. In an order to show cause, the Court noted that a plaintiff bringing suit under the Declaratory Judgment Act (asserting federal question jurisdiction) must show that the cause of action anticipated by his claim arises under federal law. Doc. 31 at 2 (citing *Fastcase, Inc. v. Lawriter, LLC,* 907 F.3d 1335, 1340 (11th Cir. 2018)). Consequently, the plaintiff has the burden of demonstrating that the anticipated action would "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And "[a]s a general rule, a case arises under federal law only if it is federal law that creates the cause of action." *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 8-9 (1983)).

Further, the Court observed that while some treaties do create rights enforceable in federal court—that is usually because they are self-executing or because federal legislation enacted the treaty and created such a right. Doc. 31 at 3. Here, however, it is undisputed that the Convention was not self-executing and was implemented in each of the 50 states through *state* law, the UIFSA. *Id.* at 3–4; Doc. 33 at 4–6.

The Court highlighted the Hague Convention on the Civil Aspects of International Child Abduction as an example of a treaty implemented by federal law that expressly extended jurisdiction over related disputes to federal courts. *See* 42

U.S.C. §§ 11601–11610. As neither the Convention nor the UIFSA include a procedure for seeking relief in federal court, this Court found that Plaintiff had not sufficiently established federal-question jurisdiction and ordered him to show cause as to why the action should not be dismissed.[1] Doc. 31 at 5.

In support of jurisdiction, Plaintiff argues that the Convention on Child Support: (1) was implemented in the United States, including in Florida, "through Congressional action"; (2) that the Convention and UIFSA allow Defendant to use federal or state law to seek recognition and enforcement of foreign child support orders; (3) that certain statutory or regulatory clauses related to enforcement of foreign child support orders raise federal questions; and (4) that because of the "inter-relationship between 42 U.S.C. § 659a, HHS, the Florida Department of Revenue, and part VII of UIFSA, all of which combine to provide [Defendant] the means to seek recognition of the Brazilian Support Orders, [Defendant's] anticipated action implicates a distinct federal question." *See* Doc. 33.

Defendants respond that Plaintiff still has not established jurisdiction, that his arguments suggest the Florida Department of Revenue may be the proper defendant to this suit, and that the action is not ripe for adjudication (*see* Doc. 34).[2]

---

[1] Additionally, the Court noted that if Plaintiff had tried to assert diversity jurisdiction in this case, the "domestic relations exception" would likely bar this Court from exercising jurisdiction over it. *See* Doc. 31 at 5 n.2.

[2] Defendants previously put the ripeness argument to the Court in a motion to dismiss that was deferred pending ruling on the preliminary jurisdictional questions at issue here. *See* Doc. 14.

Ultimately, Plaintiff's arguments are meritless. In his response, he fails to support his position—that Defendant's anticipated action arises under federal law or would implicate a substantial question of federal law—with any relevant authority. And the Court has not found any controlling authority to support Plaintiff's argument. Therefore, the action must be dismissed for lack of subject-matter jurisdiction.

When a plaintiff files suit in federal court, he must allege facts that, if true, establish federal subject-matter jurisdiction over the case. *Travaglio v. Am. Exp. Co.,* 735 F.3d 1266, 1268 (11th Cir. 2013) (citing *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994). If, however, the Court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *see Goodman ex rel. Goodman v. Sipos,* 259 F.3d 1327, 1331, n. 6 (11th Cir. 2001) ("[A district] court must dismiss a case without ever reaching the merits if it concludes that it has no jurisdiction.") (internal quotations omitted); *see also Belleri v. United States,* 712 F.3d 543, 547 (11th Cir. 2013) ("We may not consider the merits of [a] complaint unless and until we are assured of our subject matter jurisdiction.").

First, Plaintiff contends that the Convention and the UIFSA "allows [Defendant] to use the implements of both federal and state law to seek recognition and enforcement of the Brazilian Support Orders." Doc. 33 at 1. Although he asserts this argument on the first page and mentions concurrent state and federal jurisdiction later on (*id.* at 5), he fails to back these claims with citation to authority. Ultimately, as explained below, Plaintiff fails to show that Defendant's anticipated action, which

4

he concedes would be brought pursuant to a state statute, arises under federal law. *Fastcase, Inc.,* 907 F.3d at 1340.

Next, Plaintiff argues that Defendant's anticipated action arises under federal law because the Convention was implemented through Congressional action. Doc. 33 at 1–3, 6. The bulk of this argument comes under the subheading "The Central Authority under the Hague Convention." *Id.* at 1–3. Plaintiff spends a few pages discussing the UIFSA, which he argues "relies on and directly references" federal legislation related to the Hague Convention on Child Support and "additional federal law issued under agency rule-making authority granted by Congress." *Id.* at 2.[3]

Plaintiff continues by discussing the federal government's role in enacting and implementing the Convention. He notes that Section 88.70111(2), Fla. Stat., defines "central authority" as the entity designated by the United States to perform the functions specified in the Convention. Doc. 33 at 2. He points out that the United States has designated the U.S. Department of Health and Human Services ("HHS"), Office of Child Support Services, to be the central authority. *Id.* at 2–3. HHS, pursuant to a congressional mandate, delegated the performance of specific functions of the central authority under Article 6(3) of the Convention to "state IV-D child support agencies." *Id.*

Plaintiff highlights as "critical" the fact that the state agencies were created by the Social Security Act, 42 U.S.C. § 651. *Id.* at 3. This is important, he argues, because

---

[3] However, as discussed *infra*, the UIFSA is a uniform model state law that each of the 50 states have enacted, not a federal law.

under the UIFSA, the Florida Department of Revenue is the agency designated to perform specific functions under the Convention. *Id.* Plaintiff does not explain how this background information affects the jurisdictional analysis before the Court.

Finally, Plaintiff cites language from 42 U.S.C. § 659a(d)[4] that provides "States may enter into reciprocal arrangements for the establishment and enforcement of support obligations with foreign countries that are not foreign reciprocating countries or foreign treaty countries, to the extent consistent with Federal Law." *Id.* He states that such language expressly "assert[s] that any state law inconsistent with that Federal Law is pre-empted." *Id.*

Unfortunately for Plaintiff, this second set of arguments does not get him very far. Although it is true that the Convention, HHS regulations, and state law overlap somewhat and work together to enact the Convention and enforce child support orders across borders, Plaintiff again loses sight of the overarching issue: "whether or not the cause of action anticipated by [Plaintiff] arises under federal law." *Fastcase,* 907 F.3d 1335, 1340.

---

[4] This is a subsection of the International Child Support Enforcement Act, incorporated under the federal Social Security Act, which addresses aspects of the recognition and enforcement of awards for child support. This provision refers to the current arrangement between states and foreign nations on the issue of international child support enforcement and grants authority to the State Department and HHS to designate foreign nations as reciprocating countries that will honor a child support decree from the United States. *See also* Chelsea P. Ferrette, *A Critical Analysis of the International Child Support Enforcement Provisions of the Social Security Act: The (In)ability of States to Enter into Agreements with Foreign Nations,* 6 ILSA J. INT'L & COMP. L. 575, 584 (2000). Plaintiff does not make any further argument that this statute creates a right of action in federal court.

In his own words, Plaintiff anticipates that Defendant "will seek recognition and enforcement of the Brazilian Support Order." Doc. 33 at 4. Generally, a case "arises under" federal law only if it is federal law that creates the action. *Diaz,* 85 F.3d at 1505.[5] Nothing in Plaintiff's discussion of the Convention, the UIFSA, or various child support regulations establishes that Defendant's anticipated action was created by federal law. And none of his arguments are supported by authority.

A brief examination of the UIFSA also cuts against Plaintiff's position. Plaintiff states that the UIFSA allows Defendant to seek recognition and enforcement of a child support order "through the communication channels of the Brazilian central authority and the United States central authority – which HHS has delegated to be the Florida Department of Revenue." Doc. 33 at 4. He cites Section 88.7041(1)(a), the UIFSA's provision on the initiation of support proceedings which states that "the [Florida] Department of Revenue shall . . . [i]nitiate or facilitate the institution of a proceeding regarding an application in a *tribunal of this state*." (emphasis added).

Although Plaintiff makes no mention of it, the UIFSA defines a state tribunal as "[t]he circuit court or other appropriate court, administrative agency, quasi-judicial

---

[5] For example, a claim filed under Title VII of the Civil Rights Act of 1964 presents a federal question. *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 & n.7 (2019). In other declaratory judgment actions, federal question jurisdiction has been found when the anticipated action is based on federal trademark or patent law. *See Red Lobster Inns of Am., Inc. v. New England Oyster House, Inc.*, 378 F. Supp. 1144, 1146 (S.D. Fla. 1974) ("When a litigant relies on the federal trade-mark laws to support an action for declaratory relief, as plaintiff has tried to do in this case, an independent claim under the trademark laws must exist.") *aff'd* 524 F.2d 968 (5th Cir. 1975); *Medtronic, Inc., v. Mirowski Fam. Ventures, LLC,* 571 U.S. 191, 198 (2014) (holding the same with respect to federal patent law).

entity, or combination is the tribunal of this state." *See* Fla. Stat, § 88.1021. And § 88.3101(1) states that:

> (1) The [Florida] Department of Revenue is the state information agency under this act.
>
> (2) The state information agency shall:
>
> (a) **Compile and maintain a current list, including addresses, of the tribunals in this state which have jurisdiction under this act and any support enforcement agencies in this state and transmit a copy to the state information agency of every other state.** [. . .]

While neither party submits a copy of the list referenced by the statute, Plaintiff maintains that Defendant has the "choice of concurrent state and federal jurisdiction." Doc. 33 at 5. But he gives no support for his claim that Defendant could bring an action to enforce a child support order (foreign or otherwise) in federal court. Ultimately, Plaintiff fails to provide any support for his argument that a "tribunal of this state" includes a federal court.[6]

The decision most relevant to this case that the Court has found clearly supports dismissal of this case for lack of jurisdiction. Specifically, *Mullen v. Mullen,* No. 3:12-cv-499, 2012 WL 6569309, at *2 (N.D. Fla. Nov. 19, 2012), *report and recommendation adopted,* 2012 WL 6569330 (Dec. 17, 2012), held as follows where a Plaintiff sought to enforce a child support judgment against her former husband under the UIFSA:

> In this case, the plaintiff is claiming jurisdiction in part because of the UIFSA. (Doc. 5, p. 1). The UIFSA, however, is not a federal law, but is instead a model proposed state law which the federal government

---

[6] To the contrary, a search for "UIFSA" and "Florida" on Westlaw returns 190 Florida State Court decisions and only four decisions from federal district courts of the state, not a single one of which actually adjudicated the merits of a claim challenging a child support order.

8

incentivizes the states to adopt by state statute. As a result, the plaintiff asserts jurisdiction under a state law and federal question jurisdiction is inapplicable. *See Feldstein v. Hawaii, Dept. of Atty. Gen., Child Support Enforcement Agency,* No. 11–00420 LEK–KSC, 2011 WL 3156653, at *3 (D. Haw. July 25, 2011) ("[T]he [UIFSA] itself is not a federal law, but a model state law .... Neither the [UIFSA] nor the federal statutes encouraging states to adopt it create a private right of action to litigate child support obligations in federal court.") (citations omitted); *Robinson v. Pabon,* No. 3:01CV1397 (WWE), 2002 WL 32136677, at *1 n. 1 (D. Conn. Jan. 2, 2002) ("The [UIFSA] is not a federal statute. Instead, it is a model statute drafted by the National Conference of Commissioners on Uniform State Laws. UIFSA has been adopted by the legislatures of all fifty states, as a requirement of the Welfare Reform Act of 1996.") (citations omitted); *Nunnery v. Florida,* 102 F.Supp.2d 772, 776 (E.D. Mich. 2000) ("Upon conducting an independent review of this issue, it is apparent that [UIFSA and Revised Uniform Reciprocal Enforcement of Support Act] are *not* federal laws but instead model state laws, versions of which have been enacted by the various states .... This Court has researched the case law involving state enactments of the model UIFSA and [Revised Uniform Reciprocal Enforcement of Support Act] and finds absolutely no precedent for the exercise of federal jurisdiction where these two state statutes are involved.") (citations omitted). Accordingly, federal question jurisdiction in this instance is inappropriate.

Notably, Plaintiff fails to cite any authority supporting his main proposition—that a defendant's registration of a foreign child support order arises under federal law or raises a substantial federal issue. Plaintiff has not established that the anticipated action in this matter would arise under federal law. *See Patel v. Hamilton Med. Ctr., Inc.,* 967 F.3d 1190, 1194 (11th Cir. 2020).

Plaintiff also argues that Defendant's anticipated action under the UIFSA will "depend on the resolution of a substantial question of federal law." Doc. 33 at 4. It is true that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

9

*Gunn v. Minton,* 568 U.S. 251, 258 (2013). However, he fails to establish that the filing of a foreign child support order under the UIFSA would satisfy any of these conditions. *Cf. Iberiabank v. Beneva 41-I, LLC,* 701 F.3d 916, 919 n.4 (11th Cir. 2012) (holding that the district court had jurisdiction over a declaratory-judgment action because the defendant "likely could bring its own state contract claim, which would necessarily raise a federal question").

Plaintiff tiptoes around actually identifying the substantial federal issue until the end of his analysis section, which concludes with the statement that Defendant's "anticipated action implicates a distinct federal question." Doc. 33 at 5–6. Only then, in the conclusion, does he state that the federal issue would be "whether the Florida Department of Revenue – as the ostensible HHS-delegated Hague Convention Central Authority for the State of Florida – can and should seek recognition and enforcement of the Brazilian Support Orders even though the Brazilian Court never acquired personal jurisdiction over Mancini in the Brazilian Proceeding." *Id.* at 6. Plaintiff, unsurprisingly, provides no support for the proposition that a personal jurisdiction challenge would raise a substantial and necessary issue of federal law.

After careful consideration of the arguments of both sides, Plaintiff has not established that Defendant's anticipated action would arise under federal law or depend on the resolution of a substantial issue of federal law. Accordingly, the Court lacks subject-matter jurisdiction. Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409-10 (11th Cir. 1999).

Accordingly, this case is **DISMISSED without prejudice for lack of subject-matter jurisdiction**. The clerk is directed to terminate any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on November 1, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record